UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

PETER MAYER PUBLISHERS INC. d/b/a :
OVERLOOK PRESS,
                                   :
                  Plaintiff,       :       12 Civ. 8867 (PGG)(HBP)
                                   :
     -against-                             REPORT AND
                                   :       RECOMMENDATION
DARIA SHILOVSKAYA and SERGEY
SHILOVSKIY                         :

                  Defendants.   :

-----------------------------------X


          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE PAUL G. GARDEPHE, United States

District Judge,


I.   Introduction


          Plaintiff, Peter Mayer Publishers Inc., doing business

as Overlook Press, commenced this action pursuant to 28 U.S.C.

§ 2201 on December 5, 2012 against Daria Shilovskaya and Sergey

Shilovskiy seeking a declaratory judgment that plaintiff's

planned electronic book ("eBook") publication of its English

translation (the "Translation") of Mikhail Bulgakov's The Master

and Margarita, a Russian novel, does not infringe defendants'

copyright interest.  Moreover, pursuant to 17 U.S.C.

§ 104A(d)(3)(A), plaintiff seeks a determination of the "reason-

able compensation" it should pay to defendants for such publication.  In his Memorandum Order and Opinion, dated March 31, 2014, the Honorable Paul G. Gardephe, United States District Judge, granted plaintiff's motion for partial summary judgment on the issue of infringement, concluding that "the proposed eBook version of the Translation would not result in a new 'derivative work' under the Copyright Act, and would not infringe any copyright interest of the Defendants." <u>Peter Mayer Publishers Inc. v. Shilovskaya</u>, 11 F. Supp. 3d 421, 431 (S.D.N.Y. 2014).  The only outstanding issue is plaintiff's request for a determination of the compensation to be paid to defendants pursuant to Section 104A(d)(3)(A).  By notice of motion dated June 6, 2014 (Docket Item 27), defendants move for summary judgment on this issue.  For the reasons set forth below, I respectfully recommend that defendants' motion be denied.

II.  <u>Facts</u>

   A.  <u>The Work</u>

        Bulgakov wrote <u>The Master and Margarita</u> (the "Work"), a phantasmagorical view of life in Stalinist Russia, sometime prior to 1940 (Stipulation of Facts and Points of Law ("Stipulation"), annexed as Exhibit A to Complaint for Declaratory Judgment and

2

Judicial Determination of Compensation Under 17 U.S.C.

§ 104A(d)(3)(B), dated December 5, 2012, (Docket Item 1) ¶ 5).

Because it was suppressed by the Soviet authorities, the Work was

not published until 1968 in France with the authorization of

Bulgakov's heirs, the predecessors-in-interest to defendants

(Stipulation ¶¶ 5-6).  The Work was not registered in the United

States Copyright Office, and Bulgakov's heirs did not comply with

the United States Copyright Act of 1909, as amended (Stipulation

¶ 7).  Thus, the Work entered the public domain upon publication

(Stipulation ¶ 7).

        Relying upon the Work's public domain status, Ardis

Publishers ("Ardis") commissioned Professors Diana Burgin and

Katherine O'Connor to create the Translation as a work for hire

in 1989 (Stipulation ¶¶ 8-9).  Plaintiff acquired Ardis in 2001

and is Ardis' successor-in-interest (Stipulation ¶ 8).

    B.   The Restoration of the
         Copyright in the Work

        Pursuant to the Uruguay Round Agreements Act of 1994

("URAA"), enacted as Section 104A of the United States Copyright

Act, United States copyright protection for the Work was "re-

stored" to defendants, while derivative works by reliance par-

ties, like plaintiff's Translation, were still able to be ex-

3

ploited as long as the copyright holder was paid "reasonable compensation" (Stipulation ¶¶ 18-23).[1]  Defendants are the grandson and granddaughter of Bulgakov (Stipulation ¶ 15).[2]  Both are citizens and residents of Russia and hold the sole and exclusive rights to Bulgakov's literary works, including the Work, pursuant to Russian Law (Stipulation ¶ 15).

Ardis published the Translation in 1995, and, in 1996, registered it with the United States Copyright Office as a derivative work of the Work (Stipulation ¶¶ 10-11).[3]  In 1999, Ardis licensed the Translation's print publication rights to Random House, Inc.'s Vintage division ("Vintage") which is currently publishing paperbacks of the Translation in the United States (Stipulation ¶ 12).  The parties do not dispute that, pursuant to Section 104A, plaintiff is a reliance party whose printed Translation is a derivative work that may be exploited by plaintiff and its licensee, Vintage (Stipulation ¶ 24).  Pursuant to an

---

[1]For an explanation of the requirements for copyright restoration and application of Section 104A, as well as the history of the law, see Judge Gardephe's March 31, 2014 decision. Peter Mayer Publishers Inc. v. Shilovskaya, supra, 11 F. Supp. 3d at 423, 424-25.

[2]Bulgakov, who died in 1940, was married to Elena Bulkagova, who died in 1970, survived by their only child and mother of defendants, Elena Shilovskaya, who died in 1997, survived by defendants (Stipulation ¶ 15).

[3]The Translation is registered under registration number TX0004347106 (Stipulation ¶ 11).

4

agreement, defendants are paid a royalty as reasonable compensa-
tion for continued exploitation of the printed Translation (Stip-
ulation ¶ 24).

C.   The Dispute

The parties disagree over the eBook rights in the Work
(Stipulation ¶¶ 25-28).  Currently, no eBooks of the Work are
being published in the United States, but plaintiff intends to
publish an eBook of the Translation (Stipulation ¶¶ 13-14).  At
the outset of this case, defendants claimed that any eBook publi-
cation of the Translation by plaintiff would infringe their
rights in the Work, and plaintiff countered that the eBook is not
a new derivative work and does not violate defendants' copyright
(Stipulation ¶¶ 16-17).  In his March 31, 2014 decision, Judge
Gardephe granted plaintiff partial summary judgment, determining
that the eBook Translation was not a new derivative work and that
its publication would not infringe defendants' copyright inter-
est.  Peter Mayer Publishers Inc. v. Shilovskaya, supra, 11 F.
Supp. 3d at 431.

The parties now seek a determination of the "reasonable
compensation" due to defendants pursuant to Section
104A(d)(3)(A).  Defendants claim that reasonable compensation for
plaintiff's exercise of the eBook rights is either (1) a $100,000

5

advance against a thirty-five (35) percent royalty on the eBook
sale price or (2) a seventy (70) percent royalty on the eBook
sale price with no advance (Defendants [sic] Memorandum of Law in
Support of Motion for Summary Judgment, dated June 6, 2014,
(Docket Item 29) ("Defs.' Mem.") at 17).  Plaintiff claims that
reasonable compensation to defendants is twenty-five (25) percent
of plaintiff's net receipts as long as plaintiff's edition re-
mains the sole authorized eBook, with a proportional reduction
for each eBook edition published concurrently with plaintiff's,
i.e., the twenty-five (25) percent royalty would be reduced by
half if another eBook edition of the Work is published and re-
duced by two-thirds if two other eBook editions are published
(Plaintiff's Brief in Opposition to Defendant's [sic] Motion for
Summary Judgment on the issue of Compensation, dated July 18,
2014, (Docket Item 34) ("Pl.'s Br.") at 9).

III.  Analysis

    A.  Standards Applicable to a
       Motion for Summary Judgment

      The standards applicable to a motion for summary judg-
ment are well-settled and require only brief review.

      Summary judgment may be granted only where there is no
      genuine issue as to any material fact and the moving
      party . . . is entitled to a judgment as a matter of

law.  Fed.R.Civ.P. 56(c).  In ruling on a motion for
summary judgment, a court must resolve all ambiguities
and draw all factual inferences in favor of the nonmov-
ing party.  Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  To
grant the motion, the court must determine that there
is no genuine issue of material fact to be tried.
Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.
Ct. 2548, 91 L.Ed.2d 265 (1986).  A genuine factual
issue derives from the "evidence [being] such that a
reasonable jury could return a verdict for the nonmov-
ing party."  Anderson, 477 U.S. at 248, 106 S. Ct.
2505.  The nonmoving party cannot defeat summary judg-
ment by "simply show[ing] that there is some metaphysi-
cal doubt as to the material facts," Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586,
106 S. Ct. 1348, 89 L.Ed.2d 538 (1986), or by a factual
argument based on "conjecture or surmise," Bryant v.
Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The Su-
preme Court teaches that "all that is required [from a
nonmoving party] is that sufficient evidence supporting
the claimed factual dispute be shown to require a jury
or judge to resolve the parties' differing versions of
the truth at trial."  First Nat'l Bank of Ariz. v.
Cities Serv. Co., 391 U.S. 253, 288-89, 88 S. Ct. 1575,
20 L.Ed.2d 569 (1968); see also Hunt v. Cromartie, 526
U.S. 541, 552, 119 S. Ct. 1545, 143 L.Ed.2d 731 (1999).
It is a settled rule that "[c]redibility assessments,
choices between conflicting versions of the events, and
the weighing of evidence are matters for the jury, not
for the court on a motion for summary judgment."
Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997).

McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006); accord Hill

v. Curcione, 657 F.3d 116, 124 (2d Cir. 2011); Jeffreys v. City

of New York, 426 F.3d 549, 553-54 (2d Cir. 2005); Powell v. Nat'l

Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004).

        "Material facts are those which 'might affect the

outcome of the suit under the governing law,' and a dispute is

'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Copolla v. Bear Stearns & Co., 499 F.3d 144, 148 (2d Cir. 2007), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007). "'[I]n ruling on a motion for summary judgment, a judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-movant] on the evidence presented[.]'" Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 788 (2d Cir. 2007), quoting Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 298 (2d Cir. 1996).

        The Court of Appeals for the Second Circuit has further explained that

        in determining whether the moving party has met [its]
        burden of showing the absence of a genuine issue for
        trial, the district court may not rely solely on the
        statement of undisputed facts contained in the moving
        party's Rule 56.1 statement.  It must be satisfied that
        the citation to evidence in the record supports the
        assertion[s].

Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see also Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., supra, 258 F.3d at 74 ("The local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment

as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record.").

    B.  "Reasonable Compensation"
       <u>and Section 104A(d)(3)(A)&(B)</u>

       Pursuant to Section 104A(d)(3)(A), "a reliance party may continue to exploit [the] derivative work for the duration of the restored copyright if the reliance party pays to the owner of the restored copyright reasonable compensation for conduct which would be subject to a remedy for infringement but for" the URAA provisions.  17 U.S.C. § 104A(d)(3)(A).  The parties do not dispute that plaintiff is a "reliance party," and no longer dispute that plaintiff's proposed eBook is a "derivative work," within the meaning of the statute.  While "reasonable compensation" is not defined in Section 104A, Section 104A(d)(3)(B) provides that

> [i]n the absence of an agreement between the parties, the amount of such compensation shall be determined by an action in United States district court, and shall reflect any harm to the actual or potential market for or value of the restored work from the reliance party's continued exploitation of the work, as well as compensation for the relative contributions of expression of the author of the restored work and the reliance party to the derivative work.

C.   What Constitutes
     "Reasonable Compensation"
     is a Question of Fact

          Neither Section 104A nor relevant case law defines
"reasonable compensation."  Although "reasonable compensation"
has been described as a "licensing-type fee," that does not shed
much light on what constitutes reasonable compensation in a
particular case.  See Hoepker v. Kruger, 200 F. Supp. 2d 340, 346
(S.D.N.Y. 2002) (Hellerstein, D.J.).[4]

          Generally, the issue of the reasonableness of a royalty
rate or licensing fee is a question of fact.  See, e.g., United
States v. Berdan Firearms Mfg. Co., 156 U.S. 552, 573 (1895) (a
reasonable royalty in a patent dispute is a question of fact);
Bruce v. Weekly World News, Inc., 310 F.3d 25, 29 (1st Cir. 2002)
("the sole issue" in the copyright dispute "was the amount of the

_____

[4]While defendants cite to a Congressional Hearing Report to
define reasonable compensation under Section 104A, the report
relates to "reasonable compensation" for infringing upon "orphan
works," i.e., works whose owners are unable to be identified or
located, not restored works under the URAA (see Defs.' Mem. at
12, citing The Copyright Office's Report on Orphan Works:
Hearing Before the Subcomm. on Courts, the Internet, and
Intellectual Prop. of the Comm. on the Judiciary, 109th Cong. 14
(2006) (statement of Jule L. Sigall, Associate Register for
Policy & Int'l Affairs) ("Reasonable compensation" is "intended
to represent the amount the user would have paid to the owner had
they engaged in negotiations before the infringing use commenced.
In most cases it would equal a reasonable license fee as
discussed in recent copyright case law.")).

reasonable licensing fee . . . which presented what is first and foremost a question of fact, rather than law"); Faulkner v. Gibbs, 199 F.2d 635, 639 (9th Cir. 1952) (in a patent dispute, "[w]hat is a reasonable royalty is a question of fact," and "[t]here is no mathematical formula . . . [because t]he property loss of a patentee from infringement may arise from such varying facts and circumstances that each case must be controlled by those peculiar to it"); Sargent Mfg. Co. v. Cal-Royal Prods., Inc., 3:08-cv-408 (VLB), 2012 WL 3101691 at *6 (D. Conn. July 27, 2012) (same); see also Atl. & Pac. Tel. Co. v. Philadelphia, 190 U.S. 160, 166, 167 (1903) (whether a municipal license fee was reasonable was a question of fact because "[t]here are many matters which enter into the consideration of such a question, not infrequently matters which are disputed and in respect to which there is contradictory evidence"); Millspaugh Bldg. Corp. v. Comm'r of Internal Revenue, 192 F.2d 887, 889 (2d Cir. 1951) (pursuant to the Tax Code, "[w]hat constituted reasonable compensation for services . . . was a pure question of fact"); United States v. Certain Lands in Town of Highlands, 36 F. Supp. 968, 969-70 (S.D.N.Y. 1941) (Conger, D.J.) (what constituted a reasonable market value of property in a condemnation proceeding was a question of fact).

Summary judgment is inappropriate here because the record is too meager to support the conclusion that a reasonable jury could only provide one answer to the question of what constitutes reasonable compensation.

Defendants argue that in order to determine their reasonable compensation, first, it must be based on "the fair market value of a license, . . . calculated on a hypothetical, arms-length negotiation for the license, or what a willing buyer would reasonably be required to pay to a willing seller for the license" (Defs.' Mem. at 12, citing Gaylord v. United States, 678 F.3d 1339, 1343 (Fed. Cir. 2012)).  Then, defendants argue, that amount must be adjusted based on the factors listed in Section 104A(d)(3)(B) to determine their reasonable compensation (Defs.' Mem. at 12-13).  Specifically, defendants contend that the relevant facts are:  (1) an offer to defendants by Amazon for exclusive eBook rights in the United States, (2) an existing contract between defendants and publisher Grove Atlantic, Inc. (the "Grove Contract"), (3) the anticipated increase in consumer demand for an eBook as a result of a planned feature-length film adaptation of the Work and (4) the factors under Section 104A(d)(3)(B) (Defs.' Mem. at 14-16).

In contrast, plaintiff argues that reasonable compensation should be based on the market value of a license to publish

12

the Translation electronically, which can be determined by look-
ing to the standard fees plaintiff has paid for other works, as
well as the standard fees paid by similar publishers for similar
works (Pl.'s Br. at 3).  Plaintiff contends that the relevant
facts are:  (1) plaintiff's standard licensing rate, (2) the
publishing industry's standard licensing rate, (3) the number of
publishers with rights to publish at a given time and (4) the
Section 104A(d)(3)(B) factors (Pl.'s Br. at 4-5, 6-7).

It appears that the parties have lost sight of the
procedural posture of the case.  They approach the motion as if
it were a trial on written submissions.  As explained above, when
a party moves for summary judgment, it is not a judge's function
to determine which side's position is more reasonable or which
side is more likely to prevail at trial.  Rather, the issue here
is to determine whether there is a genuine issue of material fact
-- not to resolve that issue.  Collectively, the parties offer
three data points that are purportedly relevant to determining
reasonable compensation:  (1) the Amazon offer; (2) the Grove
Contract, and (3) plaintiff's affidavit evidence that there is an
industry standard rate of twenty-five (25) percent of net re-
ceipts.  Neither side, however, has offered evidence that compels
the conclusion that one, and only one, of these data points is
the only measure of reasonable compensation.

13

The Amazon offer, which defendants urge me to adopt as the sole measure of reasonable compensation, is of limited probative force because it contemplates an exclusive license to publish the Work.  Plaintiff neither has nor seeks an exclusive license.  Thus, even if Amazon's offer reflects the fair market value of a license, it is the value of a license materially different from that held by plaintiff.  Defendants respond by citing the language in Section 104A(d)(3)(B) that reasonable compensation "shall reflect any harm to the actual or potential market for or value of the restored work from the reliance party's continued exploitation of the work" and arguing that but for plaintiff's statutory right to publish the Translation electronically, defendants could offer Amazon an exclusive license and that plaintiff should, therefore be liable for the price of an exclusive license.  Plaintiff, however, points out that there are at least three other entities with the right to publish a translation of the work electronically (Declaration of Tracy Carns in Support of Opposition to Motion for Summary Judgment ("Carns Decl."), dated July 18, 2014, annexed as Attachment 1[5] to Pl.'s Br., ¶ 9).  Thus, even if I assume that defendants' argument is valid as a matter of logic, it overlooks the fact that plain-

---

[5]For documents annexed to Docket Item 34, I refer to the attachment number assigned by the Court's ECF system.

tiff's rights are not the only obstacle to defendants' ability to offer an exclusive license.

Defendants' reliance on the Grove Contract also is somewhat odd.  The fact that its terms are materially different from the Amazon offer -- a fifty (50) percent royalty of Grove's receipts (Defendants [sic] Local Rule 56.1 Statement in Support of Motion for Summary Judgment, dated June 6, 2014 (Docket Item 33) ¶ 6b[6]) -- without more, suggests the existence of a question of fact as to the fair market value of a license.  Given that all ambiguities and inferences must be drawn in favor of the non-moving party, if the Grove Contract proves anything, it proves that the lower royalty rate set forth therein is the fair market value of a license.

In response to the Grove Contract, plaintiff offers the declaration of Eric Rayman, Esq., who attests that defendants have misinterpreted the Grove Contract.  According to Rayman, the Grove Contract provides defendants with only fifty (50) percent of any royalty Grove receives for rights it licenses to third parties, not of the net receipts; Rayman goes on to opine that the Grove Contract does not grant Grove exclusive publication rights and only grants Grove the right to license electronic

---

[6]The paragraphs of defendants' Rule 56.1 statement are misnumbered; this refers to the second paragraph numbered "6."

publication rights and not the right to publish the Work elec-
tronically itself (Declaration of Eric Rayman in Support of
Opposition to Motion for Summary Judgment ("Rayman Decl."), dated
July 18, 2014, annexed as Attachment 4 to Pl.'s Br., ¶¶ 4-7;
Pl.'s Br. at 5-6; Plaintiff's Local 56.1 Statement in Response,
dated July 18, 2014 (Docket Item 35) ¶ 9).  According to Rayman,
the Grove Contract only permits Grove to license eBook rights to
third parties and Grove would most likely receive the industry
standard, i.e., twenty-five (25) percent of the licensee's net
revenue (Rayman Decl. ¶ 9).  Because the Grove Contract grants
defendants half of what Grove receives, Rayman reasons that the
net income to defendants from electronic publication pursuant to
the Grove Contract is one-half of twenty-five (25) percent of net
revenues Grove would receive or twelve and one-half (12 1/2)
percent of net revenues (Rayman Decl. ¶¶ 7-9).  Questions of fact
remain as to the value of the Grove Contract and whether it also
represents reasonable compensation.

        Finally, plaintiff submits the declaration of Tracy
Carns, an associate publisher at plaintiff, who claims that over
the last several years, plaintiff has paid royalties of twenty-
five (25) percent of net receipts for all of the books it pub-
lishes electronically (Carns Decl. ¶ 5).  Carns concludes that
the standard rate for eBook licensing for nearly all major pub-

16

lishers is no more than twenty-five (25) percent of net receipts (Carns Decl. ¶ 6).  Thus, plaintiff contends that a royalty of twenty-five (25) percent constitutes the market value of the license (Pl.'s Br. at 9).

Carns suggests that all authors of all literary works receive the same royalty rate for electronic publication rights. This may be true, but it seems odd that the works of hugely successful contemporary authors would command the same royalty rate as, for example, a non-fiction work by a first time author devoted to Charles Kettering's invention of the automotive self starter or the social impact of England's Corn Laws.  Carns' declaration may be true, but I conclude that it lacks sufficient probative force to sustain the granting of summary judgment; its uncross-examined statements, by an interested witness, are not so persuasive as to establish that a reasonable jury could reach only one conclusion as to a reasonable royalty rate, especially given the rates suggested by the Amazon offer and the Grove Contract.

D.   Summary

Neither side has offered evidence sufficiently proba-tive to demonstrate that there is only one royalty rate that

constitutes reasonable compensation.  Summary judgment should, therefore, be denied.

IV.  <u>Conclusion</u>

Accordingly, for the foregoing reasons, I respectfully recommend that defendants' motion for summary judgment on the issue of reasonable compensation be denied.

V.  <u>Objections</u>

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  <u>See</u> <u>also</u> Fed.R.Civ.P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Paul G. Gardephe, United States District Judge, 40 Foley Square, Room 2204, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Gardephe.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.  <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>United States v. Male Juvenile</u>, 121 F.3d 34, 38 (2d Cir. 1997); <u>IUE AFL-CIO</u>

Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank
v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair
Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714
F.2d 234, 237-38 (2d Cir. 1983) (per curiam).

Dated:   New York, New York
         February 6, 2015

                              Respectfully submitted,


                              HENRY PITMAN
                              United States Magistrate Judge


Copies transmitted to:

David S. Korzenik, Esq.
Ramona Houck, Esq.
Miller Korzenik Sommers LLP
Suite 1120
488 Madison Avenue
New York, New York   10022

Timothy M. O'Donnell, Esq.
19th Floor
40 Exchange Place
New York, New York   10005

19